```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x
EDWARD COHEN,                                      :
                                                   :
                        Plaintiff,                 :
                                                   :               REPORT &
        -against-                                  :               RECOMMENDATION
                                                   :               19-CV-2622 (EK) (SMG)
LYONDELLBASELL INDUSTRIES N.V.,                    :
                                                   :
                        Defendant.                 :
                                                   :
----------------------------------------------------------------------- x
```

GOLD, STEVEN M., U.S. Magistrate Judge:

## INTRODUCTION

On May 3, 2019, plaintiff Edward Cohen commenced this action against defendant LyondellBasell Industries N.V. ("defendant" or "the Company"), alleging that its 2019 definitive proxy statement filed with the Securities and Exchange Commission ("SEC") and distributed to its shareholders violated Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), and SEC Rule 14a-3(a)(1), 17 C.F.R. § 240.14a-3(a)(1), by omitting required information in Item 10.  Compl., Dkt. 1.  In August 2019, the parties stipulated to dismiss the action as moot after defendant supplemented its proxy statement in a filing made with the SEC.  So-Ordered Stip. of Dismissal, Dkt. 11.  Plaintiff now moves for attorneys' fees and costs pursuant to the common benefit doctrine.  Dkt. 14.  The motion has been referred to me for report and recommendation.  Order dated Nov. 15, 2019.  After a careful review of the materials submitted by the parties, and for the reasons stated below, I respectfully recommend that plaintiff's motion be denied.

## BACKGROUND

Defendant is "a global, independent chemical company" that has stock traded on the New York Stock Exchange. Compl. ¶ 8. Defendant has a Long Term Incentive Plan ("LTIP" or "the Plan") that "provides for the grants of awards to eligible employees and directors in the form of stock options, [Restricted Stock Units], [Performance Stock Units], restricted stock awards, stock appreciation rights ("SARs"), cash awards, and other stock awards." *Id.* ¶ 12 (quoting Proxy Statement at 58, Dkt. 1-1). The purpose of the LTIP is to further defendant's "long-term growth," "reinforce the commonality of interest between the Company's shareholders and the participants in the LTIP," and "aid in attracting and retaining employees with outstanding abilities and specialized skills." *Id.* ¶ 11 (quoting Proxy Statement at 58).

On April 9, 2019, defendant filed a definitive proxy statement with the SEC in advance of the annual general meeting of shareholders scheduled for May 31, 2019. *Id.* ¶ 1. The proxy statement contained ten items of business that were subject to a shareholder vote, including the approval of certain amendments to the LTIP under Item 10. *Id.*; *see generally* Proxy Statement. Specifically, Item 10 requested, among other things,[1] an extension of the LTIP's term, as follows:

> The LTIP was initially approved in April 2010 in connection with the Company's emergence from bankruptcy proceedings and provided for an initial 10-year term ending April 30, 2020. As of April 5, 2019, there are approximately 4.2 million shares still available for issuance under the Plan, and [the Board of Directors are asking] shareholders to approve the extension of the term of the Plan for so long as the previously approved shares remain available for issuance.

---

[1] Item 10 proposed two other amendments: (1) "Stock options or SARs issued under the Plan may not be repurchased by the Company at a time when the exercise price of the option or SAR is less than the fair market value of the underlying shares" and (2) "All awards granted under the LTIP will be subject to a one-year minimum vesting condition," with certain exceptions. Proxy Statement at 58. Neither of these proposed amendments is material to the pending motion.

Compl. ¶ 12 (quoting Proxy Statement at 58).  Item 10 also stated that the Board of Directors was "not asking for the approval of any additional shares under the LTIP," *id.* (quoting Proxy Statement at 58), and that "[a]ll regular employees of the Company and its subsidiaries and Board members are eligible to participate in the LTIP, if selected by the Compensation Committee," *id.* ¶ 14 (quoting Proxy Statement at 58).

Plaintiff, a shareholder of the Company, alleges in this action that Item 10 of the proxy statement was deficient because it failed to include the *number* of eligible Plan participants.  *Id.* ¶¶ 13–16.  On May 9, 2019, defendant amended the section of the challenged proxy statement entitled "Material Terms of the LTIP - Eligibility for Participation," which appears on page 58 of the original proxy statement, to state, among other things, that "[a]s of May 1, 2019, there were approximately 19,000 employees and 11 non-employee directors eligible to participate in the LTIP."  Supplement, Dkt. 14-5.  This supplement was filed with the SEC.  *Id.*

At the annual general meeting on May 31, 2019, the shareholders approved Item 10, with 97.5% of votes cast in favor of extending the term of the LTIP.  Form 8-K at 6, Dkt. 16-5.  Defendant issued approximately 35,000 shares in the days following the annual meeting.  Mem. of Law in Supp. of Pl.'s Mot. for Award of Att'ys' Fees & Expenses ("Pl.'s Mem. of Law") at 10, Dkt. 14-2.  The parties then stipulated to dismiss the action as moot but disputed whether plaintiff was entitled to recover attorneys' fees and expenses incurred in bringing this action.

Plaintiff now moves for attorneys' fees and costs.  Dkt. 14.  Defendant has submitted an opposition, Mem. in Opp. to Mot. for Award of Att'ys' Fees & Expenses ("Def.'s Mem. of Law"), Dkt. 15, and plaintiff has submitted a reply, Reply Mem. of Law, Dkt. 17.

**DISCUSSION**

I.  **Section 14(a) of the Securities Exchange Act & SEC Rule 14a-3**

"Section 14(a) of the Securities Exchange Act of 1934 aims to protect shareholders by allowing the SEC to prescribe rules and regulations regarding proxy solicitation materials." *Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 54 F.3d 69, 71 (2d Cir. 1995); *see* 15 U.S.C. § 78n(a).  SEC Rule 14a-3, in turn, specifically provides that "[n]o solicitation subject to this regulation shall be made unless each person solicited is concurrently furnished or has previously been furnished with . . . [a] publicly-filed preliminary or definitive proxy statement . . . containing the information specified in Schedule 14A (§ 240.14a-101)."  17 C.F.R. § 240.14a-3(a)(1).  As relevant here, Item 10(a)(1) of Schedule 14A states that

> [i]f action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed, [a proxy statement must] . . . identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation.

17 C.F.R. § 240.14a-101, Item 10(a)(1).

Here, defendant's supplemental disclosure mooted plaintiff's claims in this action.  The only outstanding issue is plaintiff's motion for attorneys' fees.

II.  **Plaintiff's Motion for Attorneys' Fees**

Plaintiff argues that he is entitled to an award of $60,000 in attorneys' fees and $740.09 in costs under the "common benefit doctrine."  Pl.'s Mem. of Law at 1, 3; *see* Time Records, Dkt. 14-4.  Defendant counters that plaintiff is not entitled to fees and costs under the common benefit doctrine because "[n]othing in this short-lived suit comes close to a 'substantial benefit' that could conceivably justify departure from the long-standing American Rule that each litigant bears its own costs."  Def.'s Mem. of Law at 1.

4

A. Legal Standard

Generally, "absent statute or enforceable contract, litigants pay their own attorneys' fees." *Chen v. Select Income REIT*, 2019 WL 6139014, at *5 (S.D.N.Y. Oct. 11, 2019) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975)). However, courts have carved out certain exceptions to the general rule, one being the "common fund doctrine," which "has been applied to award fees against a fund created by the plaintiff for the benefit of others" or "to award fees against a fund not created by the plaintiff but redistributed as a result of its attorneys' efforts." *Christensen v. Kiewit-Murdock Inv. Corp.*, 815 F.2d 206, 211 (2d Cir. 1987).

The Second Circuit uses "the term 'common fund doctrine' somewhat broadly so as to incorporate the 'common benefit' doctrine." *Savoie v. Merchants Bank*, 84 F.3d 52, 56 n.3 (2d Cir. 1996). The common benefit doctrine "permits a prevailing party to obtain reimbursement of attorneys' fees," even where no fund has been recovered, "'in cases where the litigation has conferred a substantial benefit on the members of an ascertainable class' and where it is possible to spread the costs proportionately among the members of the class." *Amalgamated Clothing & Textile Workers Union*, 54 F.3d at 71 (quoting *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393–94 (1970)). In *Mills*—an action, like this one, brought pursuant to Section 14(a) of the Securities Exchange Act—the Supreme Court held that

> "[A] substantial benefit must be something *more than technical* in its consequence and be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest."

396 U.S. at 396 (emphasis added) (internal quotation marks and citation omitted); *see also Chen*, 2019 WL 6139014, at *7.

5

The common benefit doctrine "is premised on the equitable principle that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Amalgamated Clothing & Textile Workers Union*, 54 F.3d at 71 (internal quotation marks and citation omitted). This "rationale often is applied in suits by a group of shareholders against a corporation to vindicate some substantial right of all the shareholders of the company." *Id.* "Fees may be awarded even when there is no judgment on the merits or when the dispute has become moot because the relief sought is otherwise obtained." *Chen*, 2019 WL 6139014, at *7 (quoting *Koppel v. Wien*, 743 F.2d 129, 135 (2d Cir. 1984)). "[B]efore awarding fees in a case that has become moot, the district court must determine whether plaintiff's suit was a substantial cause of the benefit obtained." *Savoie*, 84 F.3d at 56–57. "When the defendant has taken action to moot the lawsuit, defendant bears the burden of proof to establish the absence of a causal connection between the lawsuit and the defendant's action." *Id.*

      B.  <u>Whether Plaintiff is Entitled to Attorneys' Fees under the Common Benefit Doctrine</u>

Plaintiff asserts that this litigation conferred a substantial benefit because (1) it vindicated a statutory policy against securities law violations, (2) it presumably will have a deterrent effect on the future conduct of the Company's management and directors, and (3) it avoided the need to correct the issuance of void shares. Pl.'s Mem. of Law at 9–10. Plaintiff further asserts that, because "Proxy Item 10 had the second fewest votes in favor of passage, behind only an advisory resolution approving the compensation of the Company's named executive officers," this demonstrates that "many of the Company's shareholders are concerned with its compensation levels" and that the "information about the eligible participants in the Plan [was] significant to shareholders evaluating Proxy Item 10, making that a material fact as a matter of law." *Id.* at 9.

Defendant counters, among other things, that "the number of participants was not material to the issue that the shareholders were voting on: whether to extend the term of the Plan that they had already approved." Def.'s Mem of Law at 7.

As stated above, "[a] substantial benefit must be something more than technical in its consequence." *Mills*, 396 U.S. at 396 (internal quotation marks and citation omitted). For example, in *Amalgamated Clothing & Textile Workers Union*, the Second Circuit upheld an award of attorneys' fees to plaintiffs because the litigation conferred a substantial benefit on Wal-Mart's shareholders by promoting "corporate suffrage" and "the facilitation of communication among shareholders and between shareholders and management." 54 F.3d at 72. In that case, plaintiff shareholders claimed that Wal-Mart violated SEC Rule 14a-8 by refusing to include in its proxy solicitation materials a certain shareholder proposal relating to its equal employment opportunity and affirmative action policies. *See id.* at 70. Wal-Mart added the proposal to the proxy materials following the district court's decision in plaintiff's suit. *Id.* The Second Circuit held that, although the proposal was defeated at the annual meeting, "the right to cast an informed vote, in and of itself, is a substantial interest worthy of vindication," and therefore, the litigation conferred a substantial benefit on Wal-Mart's shareholders. *Id.* at 71.

In a more recent case, *Chen*, the district court granted plaintiff's motion for attorneys' fees under the common benefit doctrine. 2019 WL 6139014, at *15. The court held that the company's supplemental disclosures involving unlevered free cash flow projections, valuation analyses, and various conflicts of interest "provided material information necessary for . . . common stock shareholders to cast an informed vote concerning [a] proposed merger" and thus the litigation, which caused these supplemental disclosures to be made, conferred a substantial benefit on the shareholders. *Id*. at *13–*15.

7

Here, on the other hand, the litigation did not confer a substantial benefit. Shareholders were primarily asked in Item 10 to decide whether to extend the term of the LTIP, not whether to change the number of shares available or take any action that would impact compensation levels. Indeed, Item 10 made clear that "the number of shares authorized for issuance under the LTIP is not being changed or increased." Proxy Statement at 59. More than 97% of shareholders voted in favor of Item 10, suggesting that the disclosure triggered by this lawsuit was not of great import. Moreover, this litigation did not save the Company from having to correct void shares because the issuance of 35,000 shares following the annual meeting had already been authorized under the LTIP. Regardless of the outcome of the vote on Item 10, the term of the approved plan already extended through April 2020 and some 4.2 million shares were available to be issued. Def.'s Mem. of Law at 8. The Company's supplemental disclosures merely corrected a technical omission—one that did not have "a significant propensity to affect the voting process." *Mills*, 396 U.S. at 384.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff's motion for attorneys' fees be denied.

Objections to the recommendations made in this Report must be submitted within fourteen days after filing of the Report and, in any event, no later than July 7, 2020. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. Proc. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit).

/s/
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
June 23, 2020

U:\#JAV 2019-2020\Cohen v. LyondellBasell Industries, 19-CV-2622\Final R&R.docx