UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

EDWARD COHEN,

                      Plaintiff,           **MEMORANDUM & ORDER**
                                                   19-CV-2622(EK)(SMG)

           -against-

LYONDELLBASELL INDUSTRIES N.V.,

                      Defendant.

------------------------------------x

ERIC KOMITEE, United States District Judge:

        Plaintiff Edward Cohen sued LyondellBasell Industries N.V., alleging a deficiency in a proxy statement Lyondell filed in connection with a shareholder vote to extend its stock incentive plan.  The alleged deficiency was that the proxy statement failed to state the number of eligible plan participants, as required by the Securities and Exchange Commission's ("SEC") proxy rules.  After Plaintiff sued, but prior to the actual vote, Defendant supplemented the proxy statement with the omitted information.  The parties agree this mooted Plaintiff's claim, but they dispute whether Plaintiff is now entitled to attorneys' fees and costs.

        Before the Court is Magistrate Judge Steven M. Gold's report and recommendation ("R&R") on Plaintiff's motion for over $60,000 in attorneys' fees and costs pursuant to the "common benefit doctrine."  Judge Gold recommends that the Court deny

this motion because Plaintiff did not confer a "substantial
benefit" on Defendant's shareholders, as required by the
doctrine.  Plaintiff filed timely objections to the R&R, to
which Defendant responded.  After conducting a *de novo* review,
the Court adopts the R&R in its entirety, with one modest
exception.

## I.   Background

On April 9, 2019, Defendant filed a definitive proxy
statement with the SEC in advance of its annual meeting on May
31, 2019 (the "Proxy Statement").[1]  Compl. ¶ 1, ECF No. 1.  It
contained numerous items to be voted on, including Item 10 —
Amendment of the Company's Long-Term Incentive Plan (the
"Plan").  Compl. ¶ 12; Proxy Statement at 58-60, ECF No. 1-1.
The Plan was originally created in April 2010 to provide stock
options to eligible employees and directors for a ten-year term
ending in April 2020.  Proxy Statement at 58.  In the 2019 vote,
the Board asked shareholders to approve certain amendments to
the Plan, including "to approve the extension of the term of the
Plan for so long as the previously approved shares remain
available for issuance."  *Id.*  The Board made clear that it was
"not asking for the approval of any additional shares."  *Id.*  At

---

[1]  The Court assumes familiarity with the factual and procedural history
of this case, as set forth in greater detail in Judge Gold's R&R.

that time, there were approximately 4.2 million shares still available for issuance under the Plan.  *Id.*  In its recitation of the Plan's "material terms," the Proxy Statement recited that "[a]ll regular employees of the Company and its subsidiaries and Board members are eligible to participate in the [Plan], if selected by the Compensation Committee."  *Id.*  The Proxy Statement did not, however, say how many employees the company had at that time.

On May 3, 2019, Plaintiff filed this action alleging that the Proxy Statement violated Section 14(a) of the Securities Exchange Act and SEC regulations thereunder.  In particular, Plaintiff claimed that it contravened Item 10(a)(1) of Schedule 14A, which instructs: "Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, *indicate the approximate number of persons in each such class*, and state the basis of such participation."  17 C.F.R. § 240.14a-101 (emphasis added).

On May 9, 2019, Defendant filed a supplement to the Proxy Statement (the "Supplement") stating, in relevant part: "As of May 1, 2019, there were approximately 19,000 employees and 11 non-employee directors eligible to participate in the [Plan]."  Supplement at 3, ECF No. 14-5.  At the annual meeting on May 31, 2019, the shareholders approved Item 10, with 97.5%

of the vote in favor.  *See* Form 8-K at 6, ECF No. 16-5.  In the days following the meeting, Defendant issued approximately 35,000 shares under the Plan.  Pl.'s Mem. of Law at 10, ECF No. 14-2.

Plaintiff then filed a motion for attorneys' fees and costs, ECF No. 14, which was referred to Judge Gold.[2]  Judge Gold issued an R&R on June 23, 2020, to which Plaintiff objected on July 7, 2020.  R&R, ECF No. 20; Pl.'s Obj., ECF No. 21.

## II.  Legal Standard

A district court reviewing a magistrate judge's R&R "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  The district court reviews *de novo* those portions of an R&R to which a party has specifically objected.  *Id.*; Fed. R. Civ. P. 72(b)(3); *see also Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) ("A proper objection is one that identifies the specific portions of the R&R that the objector asserts are erroneous and provides a basis for this assertion."), *aff'd*, 578 F. App'x 51 (2d Cir. 2014).  Objections that are general, conclusory, or "merely recite the same arguments presented to the magistrate

_____

[2]  Judge Margo K. Brodie referred this motion for an R&R.  The case was subsequently transferred to the undersigned.

4

judge" do not constitute proper objections and are reviewed only for clear error.  *See Sanders v. City of New York*, No. 12-cv-113, 2015 WL 1469506, at *1 (E.D.N.Y. Mar. 30, 2015).

### III. Discussion

The common-benefit doctrine "permits a prevailing party to obtain reimbursement of attorneys' fees 'in cases where the litigation has conferred a substantial benefit on the members of an ascertainable class' and where it is possible to spread the costs proportionately among the members of the class." *Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 54 F.3d 69, 71 (2d Cir. 1995) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970).  The benefit "must be something more than technical in its consequence and be one that accomplishes a result which corrects or prevents an abuse which would. . . affect the enjoyment or protection of an essential right to the stockholder's interest." *Mills,* 396 U.S. at 396.

Judge Gold recommends denying Plaintiff's motion for attorneys' fees and costs because Defendant's supplemental disclosure merely corrected a "technical" omission, and therefore Plaintiff did not confer a "substantial benefit" on shareholders, as required by *Mills* and its progeny.  R&R at 8.  Plaintiff objects to this conclusion and to most of Judge Gold's reasoning.  Although some of these objections are repurposed

from Plaintiff's moving papers, the Court will review the R&R *de novo*.

A.   Plaintiff's *Chevron* Argument

Plaintiff claims that Judge Gold erred by resting his conclusion, in part, on the fact that shareholders were primarily asked to extend the term of the Plan, and not to (for example) increase the number of shares available, or take another action that would dilute shareholder value or impact overall compensation levels.  Pl.'s Obj. at 2-4.  In support of this objection, Plaintiff argues that the Supplement corrected a "material omission."  *Id.* at 4.  Essentially, Plaintiff's argument appears to be that any omission of information called for by Schedule 14 is material by definition, because the SEC would not have instructed proxy filers to include such information if the Commission did not think it material, and the Commission's view in that regard is entitled to *Chevron* deference (or at least something like it).  *See id*. at 3 (noting that the SEC's Disclosure Interpretations require proxy filers to include all information in Item 10, regardless of whether the proxy seeks to issue new shares or merely modify the terms of an existing plan); *see also id*. (stating that the "SEC's requirements, expressed in its own regulations, are entitled to

deference" and citing *Chevron, U.S.A. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837 (1984)).

This argument misses the point of *Mills*, which holds clearly that the "substantial benefit" standard, and not the materiality threshold, is what determines a plaintiff's entitlement to attorneys' fees. *Mills,* 396 U.S. at 396 (shareholder-plaintiff is entitled to recover fees for instituting an action that "results in a substantial benefit to [the] corporation"). The "materiality by definition" test urged by Plaintiff would effectively write *Mills*' "substantial benefit" test out of existence; instead, any action identifying a violation of Schedule 14A's instructions, no matter how "technical," would result in an entitlement to fees. This result would be inconsistent with *Mills*' admonition that the substantial entitlement "must be something more than technical in its consequence and be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest." *Id.* Plaintiff's argument is also undermined by the fact that *Mills* itself considered (in separate sections) *both* the materiality threshold and the "substantial benefit" test. *Compare Mills,* 396 U.S. at 384-85 (applying materiality threshold to the underlying violation), *with id.* at 393-97

7

(discussing "substantial benefit" test for attorneys' fees).  If *Mills* intended these to be the same thing, presumably the Court would have used the same terminology for the same test in the same opinion.

The original Proxy Statement in this case — that is, the one Plaintiff challenged — went a long stretch of the way towards the full disclosure required by the SEC, even before Plaintiff brought suit.  That version had already informed shareholders that "[a]ll regular employees of the Company and its subsidiaries and Board members" could participate — even if it didn't explicitly state the approximate number of those employees.  Proxy Statement at 58.  Given this, and given (as Judge Gold pointed out) that the number of shares being issued was not changing, it is difficult to imagine a more "technical" amendment than the one at issue.

In support of its materiality argument, Plaintiff cites two cases in this district — *Stein v. Medtronic plc*, No. 17-CV-5343 (E.D.N.Y.) ("*Medtronic*") and *Stein v. Raymond James Financial, Inc.*, No. 16-CV-379 (E.D.N.Y) ("*Raymond James*") — that ascribe significance to defendants' failure to comply with Item 10(a)(1).  *See* Pl.'s Obj. at 4.  Those cases, however, are distinguishable because they involved votes to increase the number of shares available for issuance under the plans — by an additional 50 million shares in *Medtronic* and 16 million in

8

*Raymond James*.  *See Medtronic*, Compl. ¶ 11, ECF No. 1; *Raymond James*, Transcript dated Feb. 9, 2016 at 6:25-7:3, ECF No. 16. The corrective litigation in those cases thus clearly conferred a "substantial benefit" on shareholders generally:  as the SEC has observed, shareholders have a "strong interest in understanding" equity compensation programs because of the "dilution of their ownership interests" that follows as "companies issue more shares of their stock to employees." Disclosure of Equity Compensation Plan Information, Securities Act Release No. 8048, Exchange Act Release No. 45189, 67 Fed. Reg. 232-01, 2002 WL 4156 (Jan. 2, 2002) (noting, as well, that equity compensation plans "may result in a significant reallocation of ownership in an enterprise between existing security holders and management and employees").

Those substantial benefits are not present here.  The instant Proxy Statement stated that the Board was "not asking for the approval of any additional shares" beyond those previously approved.  Proxy Statement at 58.  It reiterated that the Plan had been approved in April 2010 for a ten-year term and that approximately 4.2 million shares were still available for issuance.  *Id.*  The Proxy Statement also included almost two pages setting out the terms of the Plan under the following headers: purpose, eligibility for participation, administration, authorized shares, types of awards, maximum awards payable to an

employee, grants to non-employee directors, amendment and termination, income tax consequences, and plan benefits. *Id.* at 58-60. As noted above, the "eligibility for participation" section did provide the following meaningful information about the universe of eligible employees: "[a]ll regular employees of the Company and its subsidiaries and Board members are eligible to participate in the [Plan], if selected by the Compensation Committee." *Id.* at 58. Under the circumstances, the Court cannot conclude that the benefit conferred here was "*so significant* as to warrant the award of attorneys' fees." *Amalgamated Clothing*, 54 F.3d at 71 (emphasis added).

Plaintiff also argues the R&R failed to recognize that the right "to cast an informed vote" is, in and of itself, a substantial benefit, as the Second Circuit held in *Amalgamated Clothing*, 54 F.3d at 71. *See* Pl.'s Obj. at 6. Judge Gold did not dispute this principle, however; rather, he correctly distinguished *Amalgamated Clothing* based on its facts. In that case, the defendant — Walmart — had initially excluded the relevant proposal (relating to its affirmative-action policies) from the proxy statement in its entirety; absent the plaintiff's action, the proposal would not have gone to a shareholder vote at all. *Amalgamated Clothing*, 54 F.3d at 70; *see also* R&R at 7. Judge Gold also distinguished the facts in *Chen v. Select Income REIT*, No. 18-CV-10418, 2019 WL 6139014 (S.D.N.Y. Oct. 11, 2019),

in which a supplemental disclosure provided information
essential to evaluate a change-of-control transaction.  *Id.* at
*13 (supplement provided "information necessary for . . . common
stock shareholders to cast an informed vote concerning [a]
proposed merger," including previously omitted unlevered free
cash flow projections, valuation analyses, and various conflicts
of interest); *see also* R&R at 7 (citing *Chen*, 2019 WL 6139014,
at *13-15).

Here, in contrast, the supplemental disclosure of the
specific number of corporate employees and directors did not
substantially help to inform shareholders, as required by *Mills*.
Plaintiff cites no case supporting his novel argument that the
correction of any and every omission from a proxy statement
constitutes, by definition, a "substantial benefit," and this
Court is aware of none — notwithstanding *Amalgamated Clothing*'s
discussion of the importance of informed shareholder voting.

B.   Plaintiff's Contention that Shares Issued Would Have
     Been Rendered Void, Absent the Correction

Plaintiff's next argument alludes to a more tangible
benefit than his generic reference to informed shareholders:  he
argues that, had he not sued to correct the proxy, the shares
issued under the Plan would have been subject to rescission.
Pl.'s Obj. at 7 (arguing that "absent a properly authorized
shareholder approval of the Proposal, no shares would be legally

granted after the [Plan] expired in April of 2020"). Rescission is a strong remedy, and if the Plaintiff had actually saved the corporation from it, he might indeed have a stronger "substantial benefit" argument to make. But he cites no authority for the proposition that the omission he identified would have *required* that remedy, and again the Court is aware of none. Indeed, *Mills* itself undermines his assertion: it notes that district courts have broad discretion as to remedies for proxy violations. *See* 396 U.S. at 386-88 (holding that "nothing in the statutory policy [of Section 14] 'requires the court to unscramble a corporate transaction merely because a violation occurred,'" and that the transaction "should be set aside only if a court of equity concludes, from all the circumstances, that it would be equitable to do so").[3] Thus it remains far from certain — indeed, it seems highly doubtful — that the remedy for the foot fault here would have been rescission of any shares issued after April 2020, as Plaintiff suggests.

C.  Plaintiff's Argument Concerning the Number of Votes in Favor of the Proposal

Finally, Plaintiff argues the R&R should not have relied on the percentage of votes cast in favor of extending the

---

[3]  Notably, Plaintiff did not object to Judge Gold's finding that the litigation did not save Defendant from having to void shares issued in May 2019. As Judge Gold noted, the issuance of the 35,000 shares following the annual meeting had already been authorized under the original Plan that extended through April 2020. R&R at 8.

Plan, in part because doing so is contrary to *Amalgamated Clothing*.  Pl.'s Obj. 5-6.  The Second Circuit has held that "[t]he percentage of shares voted against a proposal is insignificant" to the question of whether a plaintiff vindicated the shareholders' right to cast an informed vote.  *Amalgamated Clothing*, 54 F.3d at 71.  Based on this admonition, the R&R shall be modified to strike the following sentence:  "More than 97% of shareholders voted in favor of Item 10, suggesting that the disclosure triggered by this lawsuit was not of great import."  R&R at 8.  This change, however, does not alter the analysis above or the conclusion that the Plaintiff's action did not meet the "substantial benefit" test.

## IV.  Conclusion

As set forth above, the Court adopts in part and modifies in part Judge Gold's Report and Recommendation dated

13

June 23, 2020.  Plaintiff's motion for attorneys' fees and costs
is denied.


        SO ORDERED.

                                  /s Eric Komitee
                                  ERIC KOMITEE
                                  United States District Judge


Dated:      September 30, 2020
            Brooklyn, New York